UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASSOCIAÇÃO DOS PROFISSIONAIS DOS CORREIOS,

Plaintiff,

-against-

THE BANK OF NEW YORK MELLON CORPORATION,

Defendant.

25-cv-1711 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

This suit is based on alleged mismanagement of pension funds from roughly 2011 to 2019 by Distribuidora de Títulos e Valores Mobiliários ("DTVM"), a Brazilian affiliate of the Bank of New York Mellon ("BNY"). Plaintiff Associação dos Profissionais dos Correios ("ADCAP") represents Brazilian postal workers who participate in the affected retirement plans. The problem is that ADCAP's claims have statutes of limitations, and BNY argues that ADCAP had actual or inquiry notice in at least 2021. ADCAP counters that it may have known about the underlying fraud back then, but not about BNY's role in overseeing its Brazilian affiliate. So, the argument goes, ADCAP didn't know it had claims *against BNY* until April 2023, when newly public testimony revealed that DTVM's compliance department reported directly to BNY in New York.

On February 13, 2026, the Court denied BNY's motion to dismiss. Dkt. 27. The Court noted that BNY's submissions made a "highly persuasive point" that ADCAP had actual or inquiry notice by at least 2021, but concluded that the issue turned on factual disputes that could not be resolved on a motion to dismiss. So the Court ordered expedited, limited discovery on the statute-of-limitations question. The parties soon disagreed about what that meant: BNY said discovery should focus on what ADCAP knew or should have known, while ADCAP wanted its own discovery into BNY's alleged efforts to conceal its role. Dkt. 28 at 2–4. The Court clarified that both sides can take discovery, but only insofar as it directly bears on the statute-of-limitations issue. Dkt. 31. After further meet-and-confers failed to resolve the parties' disagreements, the parties submitted the remaining requests in a joint chart, which is now before the Court. Dkt. 38.

The parties' main disagreement on the law is whether BNY's "concealment" is relevant to the statute of limitations issue. ADCAP seeks "evidence of concealment of BNY New York governing, directing, or performing the compliance function for DVTM in Brazil." Dkt. 38 at 1. BNY largely refuses to produce documents in response to those requests, arguing that any concealment is irrelevant because ADCAP had actual or inquiry notice in 2022 based on publicly available information. But there are two problems with BNY's argument.

First, it assumes BNY is right on the notice issue—the very issue meant to be fleshed out through discovery. And if BNY *was* taking steps to conceal its role in overseeing DTVM, that could bear on inquiry notice, *i.e.*, when a reasonable plaintiff would have discovered the relevant facts. *See Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143–46 (2d Cir. 2025) (explaining that "concealment may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim"); *Epiphany Cmty. Nursery Sch. v. Levey*, 94 N.Y.S.3d 1, 10 (N.Y. App. Div. 2019) (where defendant allegedly "went to great lengths to conceal" the transactions, plaintiff "could not have discovered the alleged fraud with reasonable due diligence").

Second, even if ADCAP did have notice in 2022, concealment can be relevant to equitable estoppel. Under New York law, equitable estoppel may apply "where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit" until after the limitations period expires. *Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022); *see also Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006) (explaining that equitable estoppel may bar a limitations defense where "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action"). As BNY points out, equitable estoppel requires ADCAP to show justifiable reliance. *Zumpano*, 849 N.E.2d at 674. And it's not clear how exactly ADCAP thinks BNY induced it not to sue. But ADCAP says it wants to advance an equitable estoppel theory, so it can seek discovery to back that up.

The relevance of concealment here is limited, though. For one, the only concealment that matters is concealment of BNY's role in overseeing DTVM—not concealment generally, or concealment of the underlying fraud by DTVM. Plus, any concealment by BNY is of secondary importance to the main question, which is what ADCAP knew and when. *See Putter v. North Shore Univ. Hosp.*, 858 N.E.2d 1140, 1143 (N.Y. 2006) (defendant's alleged misrepresentation "did not alter [plaintiff's] timely awareness of the facts requiring him to make further inquiry before the statute of limitations expired"); *see Zumpano*, 849 N.E.2d at 929 (defendant's subsequent conduct did not "alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims"). The Court remains skeptical that concealment is going to ultimately make a difference in this case. However, the standard at this stage is simply whether the material is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To give ADCAP a fair shot to make its concealment argument, the Court will permit limited discovery on that issue.

Besides the concealment issue, the parties' disputes are mostly run-of-the-mill disagreements about relevance and proportionality. For many requests, the objecting party says that, despite its objections, it has produced responsive documents—or determined that none exist. The party seeking discovery responds that the producing party must be construing the request too narrowly or that its search must have been deficient. Without more information about how the parties conducted their searches, the Court has no basis to find that any particular search was inadequate.

Still, the parties' caginess—and the fact that they continue to press their objections—gives some cause for concern. BNY, for example, says that it has no responsive documents for several

requests, but does not say that it conducted a comprehensive search and came up empty. ADCAP similarly says that it conducted a "reasonable search . . . subject to its objections," which leaves unclear whether its objections narrowed what it searched for or produced. So, for the avoidance of doubt, the Court will rule on the merits of the disputed requests. The parties should then confer about how to implement those rulings. If they reach an impasse over whether a particular search is adequate, they can bring that dispute to the Court. But that is the sort of thing the parties should be able to work out themselves.

The Court's rulings on each specific disagreement are contained in the attached chart. The parties' proposed discovery schedule, Dkt. 38 at 2, is ADOPTED.

SO ORDERED.

Dated: September 4, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge

**Appendix A – Discovery Disputes**

| **Plaintiff's Requests** | | | |
|---|---|---|---|
| **Text** | **Relevance** | **Defendant's Response** | **Court's Ruling** |
| *RFP No. 1:* Documents and communications concerning any state or federal governmental division or self-regulatory organization's investigation or inquiry into, review or examination of, or request for information for, BNY's New York personnel being involved in compliance oversight of BNY's Brazilian affiliate, including DTVM. | May lead to the discovery of admissible evidence that BNY was hiding the involvement of New York in the Brazilian compliance function. Defendant provided only a categorical response asserting that, subject to its objections, there are no documents or communications responsive to this Request, which Plaintiff contends is the result of a similarly overly restrictive reading, and is unable to corroborate Defendant's claim that no such inquiry exists. | Whether BNY "was hiding the involvement of New York in the Brazilian compliance function" goes to concealment, which is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>In any event, Defendant has no documents responsive to this Request. | GRANTED. BNY must produce responsive, nonprivileged documents. |
| *RFP No. 2:* Documents and communications concerning any decision to make, not make or structure any disclosure, self-report, voluntary self-disclosure, cooperation, or presentation to any U.S. Authorities concerning the Underlying Facts. | Goes to whether and how BNY chose to disclose or withhold the Underlying Facts. Probative of intent, the company's internal assessment of the facts, and whether disclosure decisions were made knowingly, central to the alleged disclosure violations.<br>Defendant refuses to search for documents asserting that Request No. 2 is overly burdensome. It is Plaintiff's position that the request is | "[W]hether and how BNY chose to disclose or withhold the Underlying Facts" goes to concealment, which is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>Moreover, Plaintiff's definition of "Underlying Facts" is vague and broadly defined to include (among other things) "events" or "conduct . . . concerning BNY's Brazilian | DENIED. Not sufficiently tied to the statute-of-limitations issue. ADCAP may serve a narrower request. |

| | | | |
|---|---|---|---|
| | limited and highly relevant to Defendant's concealment and hence, the reasonable inquiry with respect to Plaintiff's discovery of Defendant's involvement. Plaintiff cannot corroborate Defendant's claim that no such inquiry exists. | operations or affiliates" that "were considered by BNY in connection with any disclosure, investigation, internal review, or communication with any governmental authority." That goes far beyond Plaintiff's "concealment theory" and is not a reasonable or proportionate scope of discovery at this stage of this action, if ever. | |
| *RFP No. 3:* Documents and communications concerning any actual, proposed, contemplated, or discussed Resolution with any U.S. Authorities arising out of, relating to, or referring to the Underlying Facts. | May lead to the discovery of admissible evidence that BNY was hiding the involvement of New York in the Brazilian compliance function. Defendant provided only a categorical response asserting that, subject to its objections, there are no documents or communications responsive to this Request, which Plaintiff contends is the result of a similarly overly restrictive reading, and is unable to corroborate Defendant's claim that no such inquiry exists. | Whether "BNY was hiding the involvement of New York in the Brazilian compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>In any event, BNY has no documents responsive to this Request. | DENIED. Not sufficiently tied to the statute-of-limitations issue. ADCAP may serve a narrower request. |
| *RFP No. 4:* Documents and communications concerning any attempts to keep confidential, conceal, hide or secrete facts related to BNY's New York personnel being involved in | May lead to the discovery of admissible evidence that BNY was hiding the involvement of New York in the Brazilian compliance function. Defendant provided only a categorical response asserting that, subject to its objections, there are no documents | Whether "BNY was hiding the involvement of New York in the Brazilian compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter. | GRANTED. BNY must produce responsive, nonprivileged documents. |

| | | | |
|---|---|---|---|
| compliance oversight of BNY's Brazilian affiliates, including DTVM. | or communications responsive to this Request, which Plaintiff contends is the result of a similarly overly restrictive reading, and is unable to corroborate Defendant's claim that no such inquiry exists. | In any event, BNY has no documents responsive to this Request. | |
| *RFP No. 5:* Documents and communications concerning the scope of disclosures about the "Brazilian Postalis Litigation" in BNY's10-K filings and any decision not to make such disclosure. | May lead to the discovery of admissible evidence that BNY was hiding the involvement of New York in the Brazilian compliance function. Defendant provided only a categorical response asserting that, subject to its objections, there are no documents or communications responsive to this Request, which Plaintiff contends is the result of a similarly overly restrictive reading, and is unable to corroborate Defendant's claim that no such inquiry exists. | Whether "BNY was hiding the involvement of New York in the Brazilian compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>In any event, there are no documents concerning any decision not to make any disclosure insofar as Plaintiff mistakenly assumes that the non-disclosure was the result of a decision to conceal facts that Defendant was required to disclose in its 10-K filing. | GRANTED. BNY must produce responsive, nonprivileged documents. |
| *RFP No. 6:* Documents and communications concerning BNY's decision to dismiss José Carlos Lopes Xavier de Oliveira and other executives of BNY's Brazilian affiliates in December 2013. | May lead to the discovery of admissible evidence that BNY was hiding the involvement of New York in the Brazilian compliance function. Defendant provided only a categorical response asserting that, subject to its objections, there are no documents or communications responsive to this Request, which Plaintiff contends is the result of a similarly overly | Whether "BNY was hiding the involvement of New York in the Brazilian compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter. | DENIED. Not sufficiently tied to the statute-of-limitations issue. ADCAP may serve a narrower request. |

| | | | |
|---|---|---|---|
| | restrictive reading, and is unable to corroborate Defendant's claim that no such inquiry exists. | | |
| *Interrogatory No. 1:* Identify each present or former employee or other person working at BNY or as BNY's agent who has been responsible to report to any state or federal governmental division or self-regulatory organization concerning their investigation or inquiry into, or review or examination of, BNY's New York personnel being involved in compliance oversight of BNY's Brazilian affiliates. | Identifies key witnesses and custodians with reporting responsibilities regarding the investigation of the New York personnel's compliance role, necessary to locate relevant knowledge and testimony. Defendant provided only a categorical response asserting that there are no individuals because it read the interrogatory as assuming the existence of an investigation or review. It is Plaintiff's position that such a reading is overly restrictive. | Even if certain individuals had such responsibilities, their identities would be irrelevant to the question of when Plaintiff became aware (or should have become aware based on publicly available information) of its claims against BNY in New York. At most, this request goes to concealment, which is not relevant for the reasons described in Section II(b) of this Letter.<br><br>In any event, Defendant has fully and accurately answered this Interrogatory. There are no BNY employees responsible for reporting any investigation of BNY's alleged compliance oversight of its Brazilian subsidiaries to "any state or federal government division or self-regulatory organization." | DENIED. BNY has answered this interrogatory. |
| *Interrogatory No. 2:* Identify each present or former employee or other person working at BNY or as BNY's agent, who has been responsible for any | Identifies the decision-makers responsible for disclosure or non-disclosure, central to whether BNY was hiding its New York involvement in its compliance function | Whether "BNY was hiding its New York involvement in its compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter. | DENIED. BNY has answered this interrogatory. |

| | | | |
|---|---|---|---|
| decision to disclose or to refrain from disclosing the involvement of BNY's New York personnel in compliance oversight of BNY's Brazilian affiliates, including but not limited to DVTM, in any public filings, or in any other public manner. | Defendant provided only a categorical response asserting that there are no individuals because it read the interrogatory as assuming BNY's responsibility to disclose. It is Plaintiff's position that such reading is overly restrictive. | In any event, Defendant has fully and accurately answered this Interrogatory. There are no BNY employees responsible for any decision to disclose or not disclose "the involvement of BNY's New York personnel in compliance oversight of BNY's Brazilian affiliates" in public filings. | |
| *Interrogatory No. 3:* Identify each present or former employee or other person working at BNY, or as BNY's agent, who has been responsible to determine the scope of disclosures about the "Brazilian Postalis Litigation" in BNY's 10-K filings. | Identifies the decision-makers responsible for disclosure or non-disclosure, central to whether BNY was hiding its New York involvement in its compliance function.<br>Defendant refused to respond to Interrogatory No.3, asserting that it is overbroad given the number of individuals involved over the years, including law firms and other advisors. Plaintiff believes that the involvement of too many people is not a valid objection. The interrogatory is clearly limited to disclosures about the "Brazilian Postalis Litigation" and is highly relevant to Defendant's concealment and hence, reasonableness inquiry with respect to Plaintiff's discovery of Defendant's involvement. | Whether "BNY was hiding its New York involvement in its compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>Moreover, even if concealment were relevant, discovery of the individuals involved in the determination of disclosure appropriate for BNY's 10-K filings (numbering in the hundreds) is irrelevant to the issue of whether or not further disclosures concerning the "Brazilian Postalis Litigation" should have been made. | GRANTED IN PART. BNY must identify the five decisionmakers most responsive to this request. |

| | | | |
|---|---|---|---|
| *Interrogatory No.4:* Identify each present or former employee or other person at BNY, or as BNY's agent, who made the decision to dismiss José Carlos Lopes Xavier de Oliveira and other executives of BNY's Brazilian affiliates in December 2013. | Identifies the decision-makers responsible for disclosure or non-disclosure, central to whether BNY was hiding its New York involvement in its compliance function.<br>Defendant refused to respond to Interrogatory No.4 asserting that it is overbroad given the number of individuals involved over the years, including law firms and other advisors. It is Plaintiff's position that the involvement of too many people is not a valid objection. The interrogatory is clearly limited to the dismissal of Mr. Oliveira, the former employee whose sealed deposition supplied the information that the compliance function took place in New York and was terminated, we contend, on pretextual reasons to hide this and other misconduct, and is thus highly relevant to Defendant's concealment and hence, Plaintiff is entitled to a reasonableness inquiry with respect to Plaintiff's discovery of Defendant's involvement. | Whether "BNY was hiding its New York involvement in its compliance function" is a question of concealment and is irrelevant for the reasons described in Section II(b) of this Letter.<br><br>Moreover, even if concealment were relevant, and accepting Plaintiff's conjecture that Mr. Oliveira was terminated "on pretextual reasons to hide [that the compliance function took place in New York] and other misconduct," neither the identity of any decisionmakers nor their reasons have anything to do with any alleged wrongful concealment from Plaintiff so as to justify such an overbroad interrogatory at this stage of this action, if ever, given that Plaintiff's concealment argument is predicated on the fact of any alleged concealment rather than who was involved in it.. | DENIED. Not sufficiently tied to the statute-of-limitations issue. ADCAP may serve a narrower interrogatory. |

| Defendant's Requests | | | |
|---|---|---|---|
| **Text** | **Relevance** | **Plaintiff's Response** | **Court's Ruling** |
| *RFP No. 1:* All Documents concerning any War Chest[1], including, but not limited to: (a) any analyses, reports, memoranda, or presentations concerning the size, scope, or strategy of any War Chest; (b) the decision to establish, contribute to, or draw upon any War Chest; and (c) ADCAP's solicitations concerning any War Chest. | Documents and communications concerning ADCAP's attempt to raise money to bring a suit against BNY in the U.S. are relevant to the statute of limitations issue because Defendant understands that ADCAP began soliciting funds for its War Chest at a time that would support Defendant's statute of limitations defense and therefore, inter alia, ADCAP's knowledge, decision-making process and representations to potential contributors are material to this issue. | ADCAP objects that this request is relevant to the statute of limitations only under a legally misconceived theory. A "War Chest" is vague, argumentative, and pejorative, and terms such as "concerning," "strategy," and "draw upon" are undefined; the request is also overbroad and not proportional under Fed. R. Civ. P. 26(b)(1). ADCAP's funding efforts, litigation decisions, or communications with potential contributors do not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. The request further seeks privileged communications and attorney work product concerning litigation strategy and potential claims; ADCAP will withhold protected material and, to the extent required, provide a privilege log. | DENIED. Not sufficiently tied to the statute-of-limitations issue. BNY may serve a narrower request. |
| *RFP No. 2:* All Documents concerning ADCAP's March 2021 | ADCAP's March 2021 Press Release and its September 2021 Accountability Report stated that | ADCAP objects that the request rests on a legally misconceived statute-of-limitations theory. | |

[1] "War Chest" shall mean any fund, reserve, or pool of resources designated, intended or solicited for use (or for which the donor or funder was advised it may be used) in connection with any litigation, arbitration, or other adversarial proceeding against BNY. ECF No. 34-1.

| | | | |
|---|---|---|---|
| Press Releases or ADCAP's Accountability Report. | ADCAP had been considering suing BNY for several years and confirmed that it intended to file an action in the U.S. Documents and communications concerning the press release and report are relevant to the statute of limitations issue because they may contain information about what claims ADCAP believed it could pursue against BNY, when it concluded it had a factual basis for such claims (or was at least on inquiry notice), and the individuals involved in reaching this conclusion.<br><br>ADCAP has not indicated in our meet and confer that it continues to object to this RFP but its production was plainly incomplete and inadequate. | ADCAP's previous consideration of suing BNY in New York, whether under 28 USC § 1782 or a plenary action like this one, does not necessarily revolve around knowledge of the contents of the Oliveira Testimony nor does it establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. The request is overbroad and not proportional to the needs of the case. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization that the production was incomplete or inadequate. | GRANTED. ADCAP must produce responsive, nonprivileged documents. |
| *RFP No. 3:* All Documents concerning or reflecting your knowledge prior to April 30, 2023 of the Oliveira Testimony, including but not limited to any steps considered or taken for access to the Oliveira Testimony (including but not | Documents and communications concerning ADCAP's knowledge of the Oliveira testimony are relevant to the statute of limitations issue because Plaintiff alleges that it only learned that BNY's New York compliance department allegedly supervised DTVM with the unsealing of the Oliveira testimony in 2023, which caused ADCAP to become aware that it had claims | ADCAP objects that the request is overbroad and not proportional to the needs of the case. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization that the production was incomplete or | GRANTED. ADCAP must produce responsive, nonprivileged documents. |

| | | | |
|---|---|---|---|
| limited to as referenced in the Declaration of Guilherme de Carvalho Doval, ECF No. 24 ¶ 21) and any instructions or procedures ADCAP relied upon when making this request. | against BNY in New York. Prior knowledge of the Oliveira testimony would undermine the allegation that Plaintiff first became (or should have become) aware of its claims in 2023.<br><br>ADCAP has not indicated in our meet and confer that it continues to object to this RFP but its production was plainly incomplete and inadequate. | inadequate. Specifically, ADCAP has produced the emails that show when its counsel first requested the Oliveira testimony, the Congress unsealed it for the first time, and ADCAP's counsel received it for the first time and discovered its contents. | |
| *RFP No. 4:* All Documents concerning or reflecting your knowledge prior to April 30, 2023 of prosecutions of, investigations into, or litigations against, or the dismissal from DTVM of, José Carlos Lopes Xavier de Oliveira. | Documents concerning ADCAP's knowledge of prior investigations involving Mr. Oliveira are relevant to the statute of limitations issue because such knowledge would suggest ADCAP was on notice that his testimony was available upon inquiry as early as 2020. | ADCAP objects that knowledge of the DTVM Proposal, even if established, does not show knowledge of BNY's specific New York-based conduct or supervisory role over DTVM and therefore does not support BNY's statute-of-limitations theory. Until ADCAP requested the unsealing of the deposition, and received the transcript, nobody outside of Congress knew of its contents. The request is overbroad and not proportional to the needs of the case. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization | GRANTED. ADCAP must produce responsive, nonprivileged documents. |

| | | | |
|---|---|---|---|
| | | that the production was incomplete or inadequate. | |
| *RFP No. 5:* All Documents concerning or reflecting your knowledge of the DTVM Proposal. | According to the Complaint, the 2010 DTVM Proposal, "necessarily implied" BNY had a role in the DTVM's discharge of services to Postalis and established that BNY "specifically undert[ook] the risk as administrator." Compl. ¶¶ 23–29, 40, 49, 52. Documents and communication concerning or reflecting ADCAP's knowledge of the Proposal are therefore relevant to the statute of limitations issue because Plaintiff's prior knowledge of the Proposal would undermine its claim that it only learned about BNY's alleged supervisory role over DTVM in 2023.<br>ADCAP has not indicated in our meet and confer that it continues to object to this RFP but its production was plainly incomplete and inadequate. | The Complaint's discussion of the DTVM Proposal is clearly the product of New York counsel's evaluation of it and It no way indicates that ADCAP relied on it any point. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization that the production was incomplete or inadequate. | GRANTED. ADCAP must produce responsive, nonprivileged documents. |
| *RFP No. 6:* All Documents concerning or reflecting your knowledge of Alexej Predtechensky's April 13, 2018 Written Response. | Documents concerning Plaintiff's knowledge of Alexej Predtchensky's April 13, 2018 response to criminal allegations in Brazil are relevant to the statute of limitations issue because that response contained information about BNY's role in asset pricing and controls at DTVM. Therefore, Plaintiff's prior | ADCAP objects that knowledge of Mr. Predtechensky's Brazilian response does not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM, which it learned from the Oliveira Transcript. The request improperly treats general | GRANTED. ADCAP must produce responsive, nonprivileged documents. |

| | | | |
|---|---|---|---|
| | knowledge of this information would undermine its claim that it only learned about BNY's alleged supervisory role over DTVM in 2023.<br><br>ADCAP has not indicated in our meet and confer that it continues to object to this RFP but its production was plainly incomplete and inadequate. | awareness of Brazilian documents or events as knowledge of claims against BNY in New York and is overbroad and not proportional to the needs of the case. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization that the production was incomplete or inadequate. | |
| *RFP No. 7:* All Documents concerning (including without limitation those relied upon, referenced, consulted, or considered by ADCAP in asserting, or otherwise providing a basis for the assertion) your allegations in the Section 1782 Application, ECF Nos. 3 at 13–14, 4 ¶¶ 33, 61, that: (a) "several key departments of [BNY] appear to have had direct oversight over the corresponding areas and personnel within | Documents concerning the basis for representations ADCAP made in prior public filings are relevant to the statute of limitations because they establish ADCAP's knowledge and awareness at the time of the filings of BNY's oversight role. | ADCAP objects that materials underlying allegations in the Section 1782 Application do not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM as disclosed in the Oliveira Transcript; the request improperly seeks to litigate the merits of BNY's statute-of-limitations defense. The request is overbroad and not proportional, particularly insofar as it seeks all materials "relied upon, referenced, consulted, or considered." It also seeks communications with counsel, counsel's analyses, and attorney work product concerning | GRANTED. ADCAP must produce responsive, nonprivileged documents. |

| | | | |
|---|---|---|---|
| [DTVM]"; (b) DTVM's "financial operations were being audited, or at the very least, evaluated, by [BNY]"; (c) BNY was "involved, if not, responsible for the . . . dismissal" of DTVM executives José Carlos Lopes Xavier de Oliveira, Alberto Elias Assayag Rocha, and Marcelo Pereira da Silva)"; (d) "BNY receives and maintains copies of business records of, communications from, and other documents related to [DTVM]"; (e) "the compliance policies of [BNY]'s Brazilian subsidiaries . . . were approved by [BNY]'s Compliance Department"; and (f) DTVM employees are required "to report any violations of company policies using both [BNY] and [DTVM]'s US reporting channels . . . any such reports . . . | | potential claims and the Section 1782 proceeding. | |

| | | | |
|---|---|---|---|
| would be in the possession, custody or control of [BNY]." | | | |
| *RFP No. 8:* All Documents concerning ADCAP's decision to file the Section 1782 Application. | Documents concerning ADCAP's decision to file a Section 1782 Application are relevant to the statute of limitations issue because, as stated above, Plaintiff made representations in the 1782 proceeding suggesting that it sought discovery from BNY because of its belief that BNY had an oversight role with respect to DTVM. Further, Defendant believes that Plaintiff filed the 1782 Application in an attempt to obtain pre-lawsuit discovery for this action against BNY. Such motivation would undermine Plaintiff's claim that it only became aware that it had claims against BNY in New York in 2023 when it filed 1782 Application in 2022. | ADCAP objects that its decision to file the Section 1782 Application, and the motivations or litigation strategy surrounding that decision, have little to no bearing on when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. Indeed, commencing an action for discovery in aid of a foreign proceeding suggests the opposite. The request is overbroad and not proportional and improperly seeks discovery into the merits of the statute-of-limitations defense. It also squarely implicates attorney-client communications, counsel's advice, and attorney work product concerning potential claims and the Section 1782 proceeding. ADCAP will withhold privileged and work-product material and, to the extent required, provide a privilege log. | DENIED. Not sufficiently tied to the statute-of-limitations issue. BNY may serve a narrower request. |
| *Interrogatory No. 2:* Identify each Person who drafted, reviewed, approved, or authorized | Individuals with knowledge of ADCAP's March 2021 Press Releases are likely to have information relevant to the statute of | ADCAP objects that the request rests on a legally misconceived statute-of-limitations theory. ADCAP's previous consideration | |

| | | | |
|---|---|---|---|
| each of ADCAP's March 2021 Press Releases and ADCAP's Accountability Report. | limitations issue because ADCAP's March 2021 Press Release stated that it had been considering suing BNY for several years and confirmed that it intended to file an action in the U.S. Therefore such individuals are likely to have information about what claims ADCAP believed they could pursue against BNY and when they concluded they had such claims. | of suing BNY in New York, whether under 28 USC § 1782 or a plenary action like this one, does not necessarily revolve around knowledge of the contents of the Oliveira Testimony nor does it establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. The interrogatory is overbroad and not proportional to the needs of the case. ADCAP has produced, or agreed to produce, responsive, non-privileged documents in its possession, custody, or control following a reasonable search, subject to its objections, and disputes BNY's characterization that the production was incomplete or inadequate. | GRANTED. ADCAP must answer this interrogatory. |
| *Interrogatory No. 3:* In ADCAP's March 2021 Press Releases, ADCAP publicly represented to its members that "[a]ll the analyses [had] been carried out, the [lawsuit's] structure [was] ready" and described the action as "the most likely means of recovering resources | Individuals with knowledge of specific statements in the March 2021 Press Releases that contradict Plaintiff's claim that it only became aware that it had claims against BNY in the United States in 2023 with the unsealing of the Oliveira testimony are likely to have knowledge relevant to the question of when Plaintiff first believed it had claims against BNY in the United States. | ADCAP objects that the request rests on a legally misconceived statute-of-limitations theory. ADCAP's previous consideration of suing BNY in New York, whether under 28 USC § 1782 or a plenary action like this one, does not necessarily revolve around knowledge of the contents of the Oliveira Testimony nor does it establish when ADCAP knew or should have known of BNY's | GRANTED. ADCAP must answer this interrogatory. |

| | | | |
|---|---|---|---|
| in relation to BNY Mellon." ECF No. 19-3. Identify each Person involved or upon whom you relied in making these representations, and the basis for each of these representations. | | specific New York-based conduct or supervisory role over DTVM. The interrogatory is overbroad and not proportional, including because "relied upon" and "basis" are undefined and invite an inquiry into disputed merits. Subject to these objections, ADCAP will identify non-privileged responsive individuals, if any, after a reasonable inquiry. | |
| *Interrogatory No.4:* In the Section 1782 Application proceedings, Your counsel stated to the Court: "given the length of time that has passed since the core wrongdoing by the Brazil Defendants occurred and the absence of any agreement between BNY Mellon and ADCAP, such a lawsuit amounts to a wildly unlikely and far-fetched scenario," No. 1:18-mc-00497 (JGK) (S.D.N.Y.), ECF No. 46 at 4–8; "after a US firm has been involved to tell | Individuals with knowledge of the basis for representations ADCAP's previous counsel made that contradict the allegations made in the Complaint concerning when ADCAP became aware that it had claims against BNY in the United States are likely to have information relevant to the statute of limitations. | ADCAP objects that its decision to file the Section 1782 Application, and the motivations or litigation strategy surrounding that decision, have little to no bearing on when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. Indeed, commencing an action for discovery in aid of a foreign proceeding suggests the opposite. The discissions between counsel and client dispensing legal advice are undoubtedly privileged. The interrogatory is overbroad and not proportional and improperly seeks discovery into the merits of the statute-of-limitations defense. It also squarely implicates attorney-client communications, counsel's advice, and attorney work product | GRANTED. ADCAP must answer this interrogatory. |

| | | | |
|---|---|---|---|
| [ADCAP members] what their real options in the US are . . . they've had a change of course," No. 1:18-mc-00497 (JGK) (S.D.N.Y.), ECF No. 29 at 57–58; "once US counsel came in and we directly talked with [ADCAP] and explained to them what US law permits and what it doesn't permit, they got it," *id*. at 64. Identify each Person upon whom you relied in making these statements and the basis for each of these statements. | | concerning potential claims and the Section 1782 proceeding. ADCAP will withhold privileged and work-product material and, to the extent required, provide a privilege log. | |
| *Interrogatory No. 5:* For each of the factual assertions You made in ECF No. 3 at 13–14 and ECF No. 4 ¶¶ 33, 61 of the Section 1782 Application (No. 1:18-mc-00497 (JGK) (S.D.N.Y.), ECF Nos. 3, 4), Identify the Person(s) who first learned the facts underlying such | Individuals with knowledge of the basis for representations ADCAP made in prior filings that contradict the allegations made in the Complaint concerning knowledge of BNY's alleged oversight role of DTVM are likely to have information relevant to the statute of limitations. | ADCAP objects that materials underlying allegations in the Section 1782 Application do not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM as disclosed in the Oliveira Transcript; the request improperly seeks to litigate the merits of BNY's statute-of-limitations defense. The interrogatory is overbroad and not proportional, | GRANTED. ADCAP must answer this interrogatory. |

| | | | |
|---|---|---|---|
| assertion and the date on which such Person(s) learned such facts. | | particularly insofar as it seeks all materials "relied upon, referenced, consulted, or considered." It also seeks communications with counsel, counsel's analyses, and attorney work product concerning potential claims and the Section 1782 proceeding. | |
| *Interrogatory No. 6:* Identify each Person who was involved in any of Your efforts to solicit, collect, build, maintain, oversee, control, or otherwise manage, any War Chest. | Individuals with knowledge of ADCAP's attempt to raise money to bring a suit against BNY are likely to have information relevant to the statute of limitations issue because such individuals are likely to have knowledge about what claims ADCAP believed they could pursue against BNY in the U.S. and when they concluded they had factual support for such claims. | ADCAP objects that this request is relevant to the statute of limitations only under a legally misconceived theory. A "War Chest" is vague, argumentative, and pejorative, and terms such as "concerning," "strategy," and "draw upon" are undefined; the request is also overbroad and not proportional under Fed. R. Civ. P. 26(b)(1). ADCAP's funding efforts, litigation decisions, or communications with potential contributors do not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. The interrogatory further seeks privileged communications and attorney work product concerning litigation strategy and potential claims; ADCAP will withhold protected material and, to the | DENIED. Not sufficiently tied to the statute-of-limitations issue. BNY may serve a narrower interrogatory. |

| | | | |
|---|---|---|---|
| | | extent required, provide a privilege log. | |
| *Interrogatory No. 7:* Identify, for any War Chest: (a) every Person who authorized the solicitation or management of such War Chest; (b) the date(s) of each such authorization; (c) the date(s) on which each solicitation or collection was made; (e) the medium through which each solicitation or collection was made; and (f) all financial accounts in which the collected funds were held. | Individuals involved in the decision by ADCAP to raise money to bring a suit against BNY are likely to have information relevant to the statute of limitations issue because such individuals are likely to have knowledge about what claims ADCAP believed they could pursue against BNY in the U.S. and when they concluded they had factual support for such claims. | ADCAP objects that this request is relevant to the statute of limitations only under a legally misconceived theory. A "War Chest" is vague, argumentative, and pejorative, and terms such as "concerning," "strategy," and "draw upon" are undefined; the request is also overbroad and not proportional under Fed. R. Civ. P. 26(b)(1). ADCAP's funding efforts, litigation decisions, or communications with potential contributors do not establish when ADCAP knew or should have known of BNY's specific New York-based conduct or supervisory role over DTVM. The interrogatory further seeks privileged communications and attorney work product concerning litigation strategy and potential claims, as well as sensitive financial information. ADCAP will withhold protected material and, to the extent required, provide a privilege log. Subject to these objections, ADCAP will identify non-privileged information or | DENIED. Not sufficiently tied to the statute-of-limitations issue. BNY may serve a narrower interrogatory. |

| | | | |
|---|---|---|---|
| | | individuals, if any, after a reasonable inquiry. | |
| *RFA No. 2:* Admit that the English translations in the following exhibits to the Motion to Dismiss accurately reflect the content of the original Portuguese documents:<br><br>a) ECF No. 19-3 at 2–3: Press release by ADCAP titled "ADCAP Will Propose Action Against BNY Mellon in the United States";<br><br>b) ECF No. 19-3 at 2–3: Press release by ADCAP titled "ADCAP Will Propose Action Against BNY Mellon in the United States";<br><br>c) ECF No. 19-4 at 2–3: Press release by ADCAP titled "Lawsuit Against BNY Mellon – There Are Only 200 Left Before Our Lawsuit Against the Bank"; | The accuracy of English translations of Portuguese documents attached to the motion to dismiss is relevant to the statute of limitations issue because the cited documents undermine Plaintiff's assertion that it did not even have knowledge of claims it could bring against Defendant, let alone intended to bring claims against Defendant in the U.S. until 2023. | ADCAP has previously admitted the accuracy of all certified translations. Accordingly it admitted Request No. 2, except to the extent it relies on or incorporates non-sworn translations as to **(k) (1); (q); (r)**, prepared by Defendant's counsel. Plaintiff lacks sufficient knowledge to admit the accuracy of such translations and based on their review, understand that such translations may contain imprecisions that ADCAP should not be forced to hire its own translators to determined the adequacy of the translations.<br><br>Accordingly, ADCAP has, and does, admit the accuracy of the original Portuguese documents, except for the ones referring to (k)(1); (q); (r):<br><br>a) ECF No. 19-3 at 2–3: Press release by ADCAP titled "ADCAP Will Propose Action Against BNY Mellon in the United | GRANTED. With respect to subparts (k)(1), (q), and (r), ADCAP must make a reasonable inquiry and respond to this request in accordance with Rule 36(a)(4). |

| | | | |
|---|---|---|---|
| d) ECF No. 19-5 at 2–3: Press release by ADCAP titled "Action Against BNY Mellon – Bank Details and Return Information";<br><br>e) ECF No. 19-6 at 2–3: Press release by ADCAP titled "Lawsuit Against BNY Mellon Bank in the USA";<br><br>f) ECF No. 19-7 at 2–3: Press release by ADCAP titled "Progress of the Action Against BNY Mellon in the United States";<br><br>g) ECF No. 19-8 at 2–3: Press release by ADCAP titled "Action Against BNY Mellon in the United States – New Information";<br><br>h) ECF No. 19-9 at 2–7: Report by ADCAP "Accountability BNY Mellon Action In The | | States";<br>b) ECF No. 19-3 at 2–3: Press release by ADCAP titled "ADCAP Will Propose Action Against BNY Mellon in the United States";<br>c) ECF No. 19-4 at 2–3: Press release by ADCAP titled "Lawsuit Against BNY Mellon – There Are Only 200 Left Before Our Lawsuit Against the Bank";<br>d) ECF No. 19-5 at 2–3: Press release by ADCAP titled "Action Against BNY Mellon – Bank Details and Return Information";<br>e) ECF No. 19-6 at 2–3: Press release by ADCAP titled "Lawsuit Against BNY Mellon Bank in the USA";<br>f) ECF No. 19-7 at 2–3: Press release by ADCAP titled "Progress of the Action Against BNY Mellon in the United States";<br>g) ECF No. 19-8 at 2–3: Press release by ADCAP titled "Action Against BNY Mellon in | |

| | | | |
|---|---|---|---|
| USA," dated September 23, 2021;<br><br>i) ECF No. 19-10 at 2–3: Press release by ADCAP titled "ADCAP Initiates Measures in the US to Hold BNY Mellon Accountable";<br><br>j) ECF No. 19-11 at 2–4: Press release by ADCAP titled "Valor Econômico Article Informs About the Condemnation of the BNY in Brazil and Mentions the Action of the ADCAP";<br><br>k) ECF No. 20-1 at 2–23: Brasil. Federal Civil Court of São Paulo, 26th Court. Public Civil Action No. 0025844-38.2015.4.03.6100. Plaintiff: ADCAP – The Brazilian Postal Workers Association. Defendants: The Bank of New York Mellon DTVM S.A., KPMG Auditores | | the United States – New Information";<br>h) ECF No. 19-9 at 2–7: Report by ADCAP "Accountability BNY Mellon Action In The USA," dated September 23, 2021;<br>i) ECF No. 19-10 at 2–3: Press release by ADCAP titled "ADCAP Initiates Measures in the US to Hold BNY Mellon Accountable";<br>j) ECF No. 19-11 at 2–4: Press release by ADCAP titled "Valor Econômico Article Informs About the Condemnation of the BNY in Brazil and Mentions the Action of the ADCAP";<br>(m) ECF No. 20-4 at 2–5: Transcript of the non-restricted portion of the CPI meeting on December 10, from the official website of the Chamber of Deputies;<br>(n) ECF No. 20-5 at 2–3: Minutes of the CPI meeting on December 10, 2015; | |

| | | | |
|---|---|---|---|
| Independentes, Postalis-Instituto de Seguridade Social dos Correios e Telégrafos, and Empresa Brasileira de Correio e Telégrafos (Correios);<br><br>l) ECF No. 20-2 at 2: Excerpt of Alexej Predtechensky's written response to a criminal accusation against him concerning the alleged FIDEX fraud;ECF No. 20-3 at 2–3: CPI website post on the Oliveira Testimony;<br><br>m) ECF No. 20-4 at 2–5: Transcript of the non-restricted portion of the CPI meeting on December 10, from the official website of the Chamber of Deputies;<br><br>n) ECF No. 20-5 at 2–3: Minutes of the CPI meeting on December 10, 2015;<br><br>o) ECF No. 20-6 at 2–36: Consolidated Report | | (o) ECF No. 20-6 at 2–36: Consolidated Report on the Access to Information Law;<br>(p) ECF No. 20-7 at 2–4: CPI Database reflecting the March 28, 2023 request for the Oliveira Testimony. | |

| | | | |
|---|---|---|---|
| on the Access to Information Law;<br><br>p) ECF No. 20-7 at 2–4: CPI Database reflecting the March 28, 2023 request for the Oliveira Testimony;<br><br>q) ECF No. 20-8 at 2: BCC Articles 186, 927, and 403;<br><br>r) ECF No. 20-9 at 2–3: BCC Articles 205 and 206. | | | |
| *RFA No. 10:* Admit that the Proposal was made public on August 8, 2014, when it was attached to a complaint filed by Postalis in Brazil. TJ-RJ, No. 0266411 48.2014.8.19.0001, 29th Civil Court. | The 2010 DTVM proposal, which according to Plaintiff's own interpretation disclosed that BNY was involved in the services that DTVM provided to Postalis, *see* Compl. ¶¶ 23–29, 40, 49, 52, is relevant to the statute of limitations issue because prior availability of the Proposal undermines Plaintiff's assertion that it only became aware of BNY's role in 2023. | ADCAP lacks knowledge or information sufficient to admit or deny that the Proposal was made public on August 8, 2014, as alleged, including whether or when it became publicly available, after a reasonable inquiry. Plaintiff was not a party to the referenced proceeding, and the pleadings are not public. | DENIED. ADCAP has answered this interrogatory. |
| *RFA No. 14:* Admit that Alexej Predtechensky's written response to a criminal accusation against him concerning the alleged FIDEX fraud | Alexej Predtchensky's April 13, 2018 response to criminal allegations in Brazil is relevant to the statute of limitations issue because that response contained information about BNY's role in | ADCAP denies knowledge and information sufficient to form a belief as to the truth of when of the allegation in RFA No.14. | GRANTED. ADCAP must make a reasonable inquiry and respond to this request in accordance with Rule 36(a)(4). |

| | | | |
|---|---|---|---|
| (attached to BNY's Motion to Dismiss in the Action as Exhibit B, ECF No. 20-2) became public on April 13, 2018. | asset pricing and controls at DTVM. Therefore, the prior availability of this response would undermine Plaintiff's assertion that it only learned about BNY's alleged role overseeing DTVM in 2023. | | |